UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :

UNITED STATES,                        :

                                            :         16 Cr. 78-01 (LGS)

                                            :

          -against-              :         <u>ORDER</u>

                                            :

DAMIAN CAMPAGNA,           :

                      Defendant.  :

------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       WHEREAS, on March 24, 2020, Defendant filed an unopposed application under 18 U.S.C. § 2582(c)(1)(A)(i) for the Court to decrease Defendant's sentence by four months (from forty months to thirty-six months), which will cause him to be immediately transferred from the Brooklyn Residential Reentry Center (the "RCC") to home incarceration for the remaining four months of his sentence;

       WHEREAS, on March 31, 2017, Defendant pleaded guilty to Conspiring to Traffic Firearms in violation of 18 USC. § 371, 18 U.S.C. § 922(a)(1)(A) (Count One) and Possession and transfer of a machine gun in violation of 18 USC § 922(o)(l) and (2) (Count Two). Prior to these offenses, Defendant had no criminal record. Defendant voluntarily surrendered and was sentenced to forty months' incarceration and a $20,000 fine. Defendant asserts -- and the Government does not dispute -- that he has paid his fine in full and served his time at FCI Danbury without incident. Defendant was transferred to the RCC on February 4, 2020;

WHEREAS, Defendant seeks a modification of his sentence on the grounds that he is at high risk of contracting COVID-19 due to the conditions at the RCC, and these circumstances present "extraordinary and compelling reasons" that "warrant such reduction."  18 U.S.C. § 2582(c)(1)(A)(i).  Defendant argues that conditions at RCCs create the ideal environment for the transmission of contagious disease because the residents -- some of whom, including Defendant, work off-site on week days and stay with their families on weekends -- cycle in and out of the facilities from all over the district, and staff at the facilities leave and return daily, without screening.  Defendant further alleges that residents of the RCC sleep in bunk beds in close proximity, that he shares two bathrooms with approximately sixty men, and that residents are not allowed to use alcohol-based hand sanitizers.  Defendant states that he has been informed that a resident at the RCC tested positive for COVID-19 and was removed from the facility by ambulance.  He further asserts that the RCC has been placed in "lock-down, thereby prohibiting any resident from leaving for any reason, even for their usual weekend passes to stay at home";

WHEREAS, Defendant asserts that he is fifty-five years old.  His doctor states that Defendant "suffers from a compromised immune system with very low white blood cell counts.  This puts him at significant risk if he were to become infected with the current Coronavirus.  As such it is highly recommended for him to be isolated from any contact.  Home quarantine is highly recommended.";

WHEREAS, Defendant requested by email to Patrick McFarland, Residential Re-entry Manager, Bureau of Prisons ("BOP"), a temporary housing adjustment to allow Defendant to serve the next "two months of his sentence on home confinement in light of the significant risk of infection and spreading infection of COVID-19 at his RCC."  The request was denied;

WHEREAS, the Government does not oppose Defendant's application. In its response to the application, the Government states that Defendant "appears eligible to seek relief pursuant to § 3582(c)(1)(A) because he has exhausted BOP's internal administrative process with respect to his request" and further asserts that

> the Government does not oppose modifying Campagna's sentence such that his outstanding term of imprisonment would be replaced with an equal period of home detention, in addition to the previously-imposed period of supervised release. In the Government's view, this modification may comport with U.S.S.G.§ 1B1.13 in light of the (i) the combination of Campagna's individual health circumstances, the COVID-19 pandemic, and the capabilities of the facility where he is serving his sentence; (ii) the fact that the defendant does not appear to pose a danger to the safety of any other person or to the community; and (iii) the Government's view that a substitution of home confinement for the remaining period of community confinement will still satisfactorily address the § 3553(a) factors for sentencing, particularly in light of Campagna's upcoming release.

WHEREAS, the President of the United States has declared a national emergency due to the spread of the COVID-19 virus. Although only seventy confirmed cases had been reported in the United States at the beginning of March 2020, as of March 26, 2020, 38,987 cases have been identified in New York State alone, *see* Mitch Smith, *et al.*, *Tracking Every Coronavirus Case in the U.S.: Latest Map and Case Count*, N.Y. Times, Mar. 27, 2020, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html, and 23,112 of those confirmed cases are in New York City. *See* Bromwich, *et al.*, *365 Dead from Coronavirus in N.Y.C.: Live Updates*, N.Y. Times, March 27, 2020, https://www.nytimes.com/2020/03/27/nyregion/coronavirus-new-york-update.html. "So far, 20 percent of the people who tested positive in New York City have required hospitalization[.]" *Id*. The Centers for Disease Control and Prevention states that "[t]he virus is thought to spread mainly from person-to-person" "[b]etween people who are in close contact with one another (within about 6 feet)", "[t]hrough respiratory droplets produced when an infected person coughs or sneezes" and "[i]t may be possible that a person can get COVID-19 by touching a surface or

object that has the virus on it and then touching their own mouth, nose, or possibly their eyes[.]" *Coronavirus Disease 2019 (COVID-19), How Coronavirus Spreads*, Centers for Disease Control and Prevention, March 4, 2020, https://www.cdc.gov/coronavirus/2019-ncov/prepare/transmission.html. Courts have acknowledged that "inmates may be at a heightened risk of contracting COVID-19" due to the circumstances of confinement. *See, e.g., United States of Am., v. Dante Stephens*, No. 15 Cr. 95, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (citing Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047, 1047 (Oct. 2007), https://doi.org/10.1086/521910);

>WHEREAS, pursuant to 18 U.S.C. § 2582(c)(1)(A)(i),
>
>> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C.A. § 3582(c)(1)(A)(i);

>WHEREAS, the relevant Sentencing Commission Policy Statement, U.S.S.G. § 1B1.13,

provides that the Court may reduce a term of imprisonment if three conditions are met: (i) extraordinary and compelling reasons warrant the reduction, *id.* § 1B1.13(1)(A); (ii) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g), *id.* § 1B1.13(2); and (iii) "the reduction is consistent with this policy statement, *id.* § 1B1.13(3); *accord United States v. Gotti*, No. 02 Cr. 743-07, 2020 WL 497987, at *1–2 (S.D.N.Y. Jan. 15, 2020);

WHEREAS, the Application Notes to the Policy Statement provide in relevant part that "extraordinary and compelling reasons" exist where the defendant "is suffering from a serious physical or medical condition," "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, Application Note 1(A). Some courts have interpreted a diminished ability to provide self-care as equating to confinement to a bed or an equivalent inability to be independent in the activities of daily living pursuant to the BOP's guidance. *See, e.g., Gotti*, 2020 WL 497987, at *6 (citing Program Statement 50.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) ("PS 50.50"), at 4, *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf). Other courts have found these guidelines to be inapposite. *See, e.g., United States v. Ebbers*, No. S402 Cr. 11443, 2020 WL 91399, at *4 n.6 (S.D.N.Y. Jan. 8, 2020) (observing, "because no statute directs the Court to consult the BOP's rules or guidelines, *see* 28 C.F.R. pt. 571, subpt. G, and no statute delegates authority to the BOP to define the statutory requirements for compassionate release, the Court finds the BOP Guidelines to be inapposite" and citing cases). "[T]he majority of district courts to consider the question have found that the amendments made to 18 U.S.C. § 3582(c)(1)(A) grant this Court the same discretion as that previously given to the BOP Director, and therefore the Court may independently evaluate whether [defendant] has raised an extraordinary and compelling reason for compassionate release." *United States v. Lisi*, No. 15 Cr. 457, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020), *reconsideration denied*, No. 15 Cr. 457, 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) (citing cases and finding the existence of an extraordinary and compelling reason that is not specifically enumerated in the Application Notes);

WHEREAS, the denial of Defendant's request by the Residential Re-entry Manager suffices to exhaust his administrative rights. *See Ebbers*, 2020 WL 91399, at *2 (finding administrative exhaustion where defendant petitioned the BOP for compassionate release and was denied). It is hereby

**ORDERED** that Defendant's application is GRANTED IN PART. Here, Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC. U.S.S.G. § 1B1.13, Application Note 1(A). The Court further agrees with the Government that the Defendant does not pose a danger to the safety of any other person or to the community -- particularly since he has been working in the community and visiting his family without issue during his residence at the RCC -- and that a substitution of home incarceration for the remaining four months of Defendant's confinement in the RCC satisfactorily addresses the relevant § 3553(a) factors, particularly in light of his approaching release. It is further

**ORDERED** that Defendant's sentence is modified to replace his outstanding term of imprisonment with an equal period of home incarceration, in addition to the previously-imposed period of supervised release. Specifically, his term of incarceration is amended to conclude forthwith, and his conditions of supervised release are amended to add the condition of home incarceration for what would have been the remainder of his term.

Dated: March 27, 2020
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**