

**ANDREW MANCILLA**
NY, NJ, SDNY, EDNY, DNJ, 2ND CIRCUIT

260 MADISON AVE, 22ND FLR
NEW YORK, NY 10016
**T** 646.225.6686  **F** 646.655.0269
andrew@law-mf.com

January 11, 2022

**VIA ECF**
Honorable Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

*For the reasons stated below, Defendant Campagna's application for the early termination of his supervised release is GRANTED. The Clerk of the Court is directed to terminate the letter motion at docket number 142.*

*Dated: January 19, 2022*
*New York, New York*

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

Re:   **United States v. Damian Campagna, et al.,
16 Cr. 78 (LGS)**

Dear Judge Schofield:

I write on behalf of Damian Campagna to respectfully request that the Court issue an Order terminating his supervised release pursuant to 18 U.S.C. §3583(e)(1).  Mr. Campagna's *exceptional behavior* throughout this case, and particularly since his sentence of 40 months, is sufficiently compelling to warrant early termination of supervised release.  Additionally, although expected of him, Mr. Campagna has completed every aspect of his sentence without blemish and his track record of compliance obviates further need for supervision.  Accordingly, we submit that early termination of Mr. Campagna's supervised release is warranted.

In this regard, his supervising Probation Officer Vincent Danielo has stated that Mr. Campagna has been fully compliant with all of his supervised release requirements, and he does not object to early termination.  Assistant United States Attorney Andrew Thomas stated that the Government will defer to Probation and will not oppose the termination of Mr. Campagna's supervised release.

## I.      PROCEDURAL HISTORY

On March 31, 2017, Mr. Campagna pleaded guilty to Conspiring to Traffic Firearms in violation of 18 U.S.C. § 371, 18 U.S.C. § 922(a)(1)(A) (Count One) and Possession and transfer of a machine gun in violation of 18 U.S.C. § 922(o)(l) and (2) (Count Two).  Prior to these offenses, Mr. Campagna had no criminal record.

On September 7, 2017, the Court sentenced Mr. Campagna to forty (40) months incarceration on counts one and two to run concurrently, 200 hours of community service, as well as a $20,000 fine. Dkt 108.  At sentencing the Court observed "the letters from family and friends paint a very consistent picture of a person who is generous, helpful, honest, loyal, hard-working, personable, with strong community ties and participation in charitable efforts and,

Honorable Lorna G. Schofield
Re:      *United States v. Damian Campagna, et al.,* 16 Cr. 78 (LGS)
January 11, 2022
Page 2 of 6

although I might be a little bit cynical and discount the work you've done with the BOCES organization because it postdated your arrest and of course would be something your lawyers could talk about, I also see that you've been engaged in charitable works long before that and so I see that as a part of your character." Sent. Tr. at p. 47-48.

       The Court permitted Mr. Campagna to voluntarily surrender to his designated correctional facility four (4) months later so that he could spend time with his family during the holidays.  On January 4, 2018, Mr. Campagna voluntarily surrendered to FCI Danbury in Connecticut.  Prior to beginning his sentence at FCI Danbury, Mr. Campagna paid his $20,000 fine in full. Dkt. 113.

       Mr. Campagna served his time at FCI Danbury without incident and was transferred to the Brooklyn Residential Reentry Center (the "RCC") on February 4, 2020.

       On March 24, 2020, Mr. Campagna filed an unopposed application under 18 U.S.C. § 2582(c)(1)(A)(i) for a modification of his sentence to serve his remaining time at the RRC on home confinement based on his compromised immune system and the COVID-19 public health crisis. Dkt. 130.

       On March 27, 2020, the Court granted Mr. Campagna's application in part and modified his sentence to replace his outstanding term of imprisonment with an equal period of home incarceration, in addition to the previously imposed period of supervised release. Dkt. 135.

       Shortly thereafter Mr. Campagna was released to home incarceration and probation began his three (3) year term of supervised release on March 30, 2020.  As of the filing of this letter, Mr. Campagna has served over twenty-one (21) of the thirty-six (36) months of his supervised release.

## II.      LEGAL STANDARD

       Pursuant to 18 U.S.C. §3583(e)(1) the Court may, "after considering the factors set forth in section 3553(a)…terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release… if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *See also* Fed. R. Crim. P. 32.1.

       Although compliance with the terms of supervised release is expected and does not, in and of itself, qualify as "exceptionally good behavior" (*see United States v. Katz*, 2008 U.S. Dist. LEXIS 86140, 2008 WL 4699832, at *2 (S.D.N.Y. Oct. 23, 2008)), a defendant's active participation in rehabilitative programs in prison, steady employment, stable family life, dissociation from prior bad influences, and securing of a certificate of relief from disabilities, all constitute "exceptional" behavior sufficient to grant early termination of supervised release. *See United States v. Rentas*, 573 F. Supp. 2d 801, 802 (S.D.N.Y. 2008) (defendant's conduct on supervised release—securing steady employment, successfully completing a drug treatment

Honorable Lorna G. Schofield
Re:        *United States v. Damian Campagna, et al.,* 16 Cr. 78 (LGS)
January 11, 2022
Page 3 of 6

program, maintaining a stable family life, passing all unannounced drug tests, having no new contacts with law enforcement—were sufficiently compelling grounds to warrant early termination); *see also United States v. Kapsis*, 2013 U.S. Dist. LEXIS 55040, 2013 WL 1632808 *1 (S.D.N.Y. Apr. 16, 2013) (finding "changed circumstances" after the defendant "maintained steady employment, successfully completed treatment, and had no negative contacts with law enforcement.");  *United States v. Dwyer*, No. 15-cr-385 (AJN), 2019 U.S. Dist. LEXIS 111519, at *5 (S.D.N.Y. July 2, 2019) (evidence of defendant's "exceptionally good behavior" that may warrant a reduction in the term of probation included his obtaining a Certificate of Relief from Disabilities).

        In addition to these factors, early termination is also warranted where the defendant has shown successful community reintegration and presents no risk of safety to any individual or to the public. *United States v. Etheridge*, 999 F. Supp. 2d 192, 197-98 (D.D.C. 2013).  Such good behavior "render[s]" a defendant's previously imposed term or condition of release "too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997).

## III.    APPLICATION

        Here, Mr. Campagna's "exceptionally good behavior" as well as his "history and characteristics," offer compelling grounds for early termination of his supervised release.  First, Mr. Campagna is 56 years old, has been happily married (for nearly 18 years), has remained fully employed his entire life, and has a long track record giving back to his community by hosting and participating in numerous fundraisers as well as volunteering his time to teach young adults. PSR at p.19.  At his sentencing, the Court observed:

> [T]he letters from family and friends paint a very consistent picture of a person who is generous, helpful, honest, loyal, hard-working, personable, with strong community ties and participation in charitable efforts and, although I might be a little bit cynical and discount the work you've done with the BOCES organization because it postdated your arrest and of course would be something your lawyers could talk about, I also see that you've been engaged in charitable works long before that and so I see that as a part of your character.

Sent. Tr. at p. 47-48.

        As previously noted, the Court was accurate in its evaluation of Mr. Campagna's good character, and his family remained supportive of him throughout his incarceration.  Notably, during his incarceration, his wife Janene made the 3-hour round-trip drive to visit him twice (2x) a week (which amounted to over two hundred (200) times), and his in-laws and family friends (Linda and Albert Tarasuk, Lawrence Tarasuk, Karla Unruh, and Eliezer Saporta) visited him at

Honorable Lorna G. Schofield
Re:     *United States v. Damian Campagna, et al.,* 16 Cr. 78 (LGS)
January 11, 2022
Page 4 of 6

least once a month.[1]  Although the prison normally only permits inmates to have ten (10) total visitors, Mr. Campagna's counselor permitted him to have twenty-one (21).  Many of Mr. Campagna's friends who attended his sentencing also visited him in prison, including three (3) friends that traveled across the world to do so.[2]

Second, we remind the Court that not only was the instant offense the first and only offense in Mr. Campagna's life, despite his guideline range of 57-71 months, the Probation Department highlighted Mr. Campagna's remorse and recommended a sentence of 36 months based on the following:

> [W]e believe that Campagna's involvement in the instant offense was a serious lapse in good judgment, not a criminal mind set. As such, we respectfully recommend a term of 36 months' imprisonment. We believe that term of imprisonment accounts for Campagna's mitigating factors while still satisfying the sentencing objectives of just punishment, general deterrence, and protection of the community.

PSR at ¶19.

Third, Mr. Campagna has led an exemplary law-abiding life since the inception of this case.  Prior to serving his sentence Mr. Campagna spent twenty-five (25) months on home confinement under strict supervision and electronic monitoring without any missteps.  The Court also permitted him to return to work so that he could continue to earn a livelihood, provide for his family, and fulfil several community volunteer activities prior to his voluntary surrender to FCI Danbury.

During Mr. Campagna's term of incarceration, rather than simply serve his sentence without incident, which he did, Mr. Campagna took full advantage of FCI Danbury's programs to rehabilitate and put his employable skills to good use.  He read over a dozen novels and took over *nine (9) courses* (dkt 127-2), including:

1. the HVAC Ace Apprenticeship Course;
2. CCP re-entry Workshop;
3. "Marketing,"
4. "FDIC-Money Management,"
5. "Victory at Sea,"
6. "Affordable Housing Development Strategies,"
7. "Intro to Medical Terminology,"
8. "Real Estate Investing,"
9. a "Technology Workshop," and
10. a "Leadership Workshop," and

---

[1] Mr. Campagna's visiting logs from 2018 and 2019 were annexed as Ex. C to his application for a judicial recommendation for maximum RRC placement filed on February 1, 2019. *See* dkt. 127; 127-3.
[2] Brian Veit and Rosalie Carlson travelled from Las Vegas, Nevada, and Esty Deutcher travelled from Israel.

Honorable Lorna G. Schofield
Re:     *United States v. Damian Campagna, et al.,* 16 Cr. 78 (LGS)
January 11, 2022
Page 5 of 6

      11. "Heating and Air Conditioning."

      Dkt. 127 at 7 (*citing* Ex. B, bates #2-9 [dkt 127-2])

      Additionally, during his incarceration, he *maintained steady employment at the CMS department* as the second-in command Technician for their HVAC repair and maintenance crew. *Id*. Upon his release from prison, Mr. Campagna then immediately sought to apply his newly developed skill set in maintaining and repairing HVAC systems in gaining full-time employment out of prison.

      On February 6, 2020, within two days of his release to the RRC in Brooklyn, Mr. Campagna began working full time for Callahan Industries, a commercial construction company, which was considered an "essential business" during the pandemic. Since his transfer to home confinement on March 27, 2020, Mr. Campagna maintained steady full-time employment with Callahan Industries until June, 2021, when he was offered, and successfully secured an opportunity to expand his skill set working for a vintage poster and auction boutique, where he is currently on track to become the store's manager. His pursuit of this new line of work is an active decision to dissociate himself from his ownership of his motorcycle shop and seek employment in an industry with greater career growth potential.

      Further, Mr. Campagna's dedication to supporting his family has continued since his release from incarceration. Since his transfer home, and despite his full-time employment, Mr. Campagna made the most of any spare time by renovating an entire room of his home to construct a home gym for his parents-in-law. His continued effort to go above and beyond, both in prison and upon release, all in the face of the COVID-19 health crisis, is truly remarkable and provides a compelling basis for early termination. *See Rentas*, 573 F. Supp. 2d at 802.

      We note that while he has successfully and fully reintegrated into society and family life, as a result of his current supervision, his travel has been limited and he has not had the opportunity to visit friends and family out of state, including many of those who attended his sentencing and visited him during his incarceration. Terminating supervision would allow his freedom to be restored so that he can visit these friends and family.

      What is more, despite the difficulties of the pandemic, by October 5, 2021, Mr. Campagna completed his 200 hours of Court Ordered Community Service, consisting of 64 hours at Ruff House Rescue; 21 hours at Commonpoint Queens; and 115 hours at Catholic Charities of Long Island. On November 18, 2020, Mr. Campagna was also granted a Certificate of Relief from Disabilities from the New York State Department of Corrections and Community Supervision[3], which constitutes evidence of exceptionally good behavior. *Dwyer*, 2019 U.S. Dist. LEXIS at *5.

---

[3] A copy of Mr. Campagna's Certificate of Relief from Disabilities is annexed hereto at Exhibit "A".

Honorable Lorna G. Schofield
Re:      *United States v. Damian Campagna, et al.,* 16 Cr. 78 (LGS)
January 11, 2022
Page 6 of 6

Finally, Mr. Campagna has demonstrated that continued supervision is no longer
necessary.  Mr. Campagna poses absolutely no danger to any individual or the community.
Notably, the Court's March 27, 2020 Order stated:

> The Court further agrees with the Government that the Defendant does not
> pose a danger to the safety of any other person or to the community --
> particularly since he has been working in the community and visiting his
> family without issue during his residence at the RCC -- and that a
> substitution of home incarceration for the remaining four months of
> Defendant's confinement in the RCC satisfactorily addresses the relevant
> § 3553(a) factors, particularly in light of his approaching release.

Dkt. 135 at 6.

Further, Mr. Campagna's supervision has been minimal, and he has complied with all
directives of Probation and the Court.  He has been required to check in monthly and he
submitted to and consistently passed random drug and alcohol tests.  His track record of
exemplary behavior remains unblemished.

## IV.      CONCLUSION

Accordingly, considering Mr. Campagna's exceptionally good behavior and because
there appears to be no further need to continue to supervise Mr. Campagna, we respectfully
request that his supervised release be terminated at this time so that he may finally put his
transgression behind him and begin a new chapter in his life.

I thank the Court for its consideration of this application and will be glad to supplement
this request with additional information should the Court deem it necessary.

Respectfully submitted,

Andrew Mancilla

Enclosure

Cc:      A.U.S.A. Andrew Mark Thomas (via ECF)
         A.U.S.A. Danielle Sassoon (via ECF)

# Exhibit A

 **Corrections and Community Supervision**

**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

November 18, 2020

Mr. Damian J. Campagna



Dear Mr. Campagna:

I am pleased to inform you that the NYS Department of Corrections and Community Supervision has granted you the enclosed Certificate of Relief from Disabilities, CR# 20-369.

The certificate provides relief from forfeitures, disabilities or bars to employment and licensing automatically imposed by New York State law as a result of your conviction, **EXCEPT THE RIGHT TO POSSESS FIREARMS AND THE RIGHT TO BE ELIGIBLE FOR PUBLIC OFFICE.**

The certificate does not remove your record of conviction. Therefore, where an application or document requires the information, you should disclose your conviction and also the fact that you were granted this certificate.

This certificate is temporary and will become permanent upon completion of sentence.

Please keep your original certificate in a safe place so it will be available to you when needed.

Sincerely,

William Fitzpatrick, Director
Executive Clemency Bureau
Certificate Review Unit

Enclosure

WF/yr

cc: US Probation-Eastern District of NY, USPO J. Enciso



STATE OF NEW YORK

DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION

CERTIFICATE OF RELIEF FROM DISABILITIES

Identifying No.

CR#      20-369

This certificate is issued to the holder to grant relief from all or certain enumerated disabilities, forfeitures or bars to his employment automatically imposed by law by reason of his conviction of the crime or of the offense specified herein.

This certificate shall NOT be deemed nor construed to be a pardon.

SEE REVERSE SIDE FOR EXPLANATION OF THE LAW GOVERNING THIS CERTIFICATE

The Original Certificate is to be presented to the person to whom awarded. One copy is to be retained by the issuing agency, and one copy is to be filed with the NYS Division of Criminal Justice Services, 4 Tower Place, Albany, NY 12203-3702.

| 1. For use by DCJS | HOLDER OF CERTIFICATE | 3. NYSID Number (If not known, supply fingerprints to DCJS. If fingerprints are unobtainable, complete items 15-18 below) |
|---|---|---|
| | 2. Last Name, First Name, Middle Initial<br><br>**CAMPAGNA, DAMIAN** | **05348303L** |

| 4. Crime or offense for which convicted | 5. Date of Arrest | 6. Date of Sentence |
|---|---|---|
| **Firearms Trafficking Conspiracy Possession and Transfer of a Machine Gun** | **12/07/2015** | **09/07/2017** |

| 7. Court of disposition (Court, Part, Term, Venue) | 8. Certificate issued by New York State Department of Corrections and Community Supervision |
|---|---|
| **United States District Court Southern District of New York** | 10. If this Certificate replaces previously issued Certificate, give date of previous Certificate of Relief from Disabilities |

9. Date this certificate issued

4/6/20

Date:      [X] Not applicable

11. CHECK ONE BOX ONLY

This certificate shall:

| a | | Relieve the holder of all forfeitures, and of all disabilities and bars to employment, excluding the right to retain or to be eligible for public office, by virtue of the fact that this certificate is issued at the time of sentence. The Date of Sentence in this case must agree with the Date Certificate Issued. |
|---|---|---|
| b | | Relieve the holder of all disabilities and bars to employment, excluding the right to be eligible for public office. |
| c | X | Relieve the holder of the forfeitures, disabilities or bars hereinafter enumerated - removes all legal bars and disabilities to employment, license and privilege except those pertaining to firearms under Section 265.01(4) and 400.00 of the Penal Law and except the right to be eligible for public office. |

12. [ ]   This certificate shall be considered permanent.

[x]   This certificate shall be considered temporary until discharged from probation/supervised release
Date of discharge: 03/29/2023.
After this date, unless revoked earlier by the Department of Corrections and Community Supervision, this certificate shall be considered permanent. A person who knowingly uses or attempts to use a revoked certificate in order to obtain or exercise any right or privilege that (s)he would not be entitled to obtain or to exercise without valid certificate shall be guilty of a misdemeanor.

| 13. Signature of issuing official | Print or type name | 14. Title |
|---|---|---|
| | **Marco Ricci** | **ASSOCIATE COMMISSIONER** |

COMPLETE THE FOLLOWING FOR DCJS ONLY IF FINGERPRINTS ARE NOT OBTAINABLE

| 15. Sex | 16. Race | 17. Height | 18. Date of Birth (Month, Day, Year) |
|---|---|---|---|
| | | | |

DP-53 (rev. 06/2012)

## LAWS GOVERNING THE ISSUANCE OF CERTIFICATES OF RELIEF FROM DISABILITIES

(The laws governing the issuance of certificates of relief from disabilities are set forth in Article 23 of the New York State Correction Law. The excerpts below summarize certain portions of those laws and are set forth merely for convenience. They are not intended as administrative interpretations and they do not relieve any party of full knowledge of and compliance with the applicable provisions of law.)

This certificate is issued to relieve the holder, an "eligible offender" as defined in §700 of the Correction Law, of all or enumerated forfeitures, disabilities, or bars to employment automatically imposed by law by reason of his conviction of the crime or offense specified on the face of this certificate.

This certificate shall be considered a "temporary certificate" where (1) issued by a court to a holder who is under a "revocable sentence" as defined in §700 of the Correction Law and the court's authority to revoke such sentence has not expired, or (2) issued by the Department of Corrections and Community Supervision and the holder is still under the supervision of the Department of Corrections and Community Supervision. Where the holder is under a revocable sentence, this certificate may be revoked by the court for violation of the conditions of such sentence and shall be revoked by the court if it revokes the sentence and commits the holder to an institution under the jurisdiction of the Department of Corrections and Community Supervision. Where the holder is subject to the supervision of the Department of Corrections and Community Supervision, this certificate may be revoked by the Department of Corrections and Community Supervision for violation of the conditions of community supervision or release. Any such revocation shall be upon notice and after an opportunity to be heard. If this certificate is not so revoked, it shall become a permanent certificate upon expiration or termination of the court's authority to revoke the sentence or upon termination of the jurisdiction of the Department of Corrections and Community Supervision over the holder.

### RIGHTS OF RELIEF FROM DISABILITIES

A.  Where the certificate is issued by a court at the time sentence is pronounced, it covers forfeitures as well as disabilities. In any other case the certificate applies only to disabilities.

B.  A conviction of the crime or the offense specified on the face of this certificate shall NOT cause automatic forfeiture of any license, permit, employment or franchise, including the right to register for or vote at an election, or automatic forfeiture of any other right or privilege, held by the eligible offender and covered by the certificate. Nor shall such conviction be deemed to be a conviction within the meaning of any provision by law that imposes, by reason of a conviction, a bar to any employment, a disability to exercise any right or a disability to apply for or to receive any license, permit or other authority or privilege covered by the certificate. Provided, however, that no such certificate shall apply, or be construed so as to apply, to the right of such person to retain or to be eligible for public office.

C.  A conviction of the crime or the offense specified on the face of this certificate shall NOT prevent any judicial, administrative, licensing or other body, board or authority from relying upon the conviction specified on the reverse side of this certificate as the basis for the exercise of its discretionary power to suspend, revoke,  refuse to issue or renew any license, permit or other authority or privilege.



DP-53 (rev. 06/2012)